# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**TRIOSIM CORPORATION,**

       **Plaintiff,**

      **v.**                         **Case No. 24-CV-382**

**SOMARAKIS, INC., et al.,**

      **Defendant.**

## ORDER

Before the court are Triosim Corporation's motions for attorney fees (ECF No. 62), sanctions (ECF No. 63), and for default judgment (ECF No. 66). The defendants have not responded.

The court finding counsel's hourly rate and hours expended to be reasonable, Triosim's motion for attorney fees (ECF No. 62) is **granted**. Pursuant to Fed. R. Civ. P. 37(a)(5)(A), John Somarakis shall pay to Triosim the amount of **$5,154.90**.

Triosim's motion for sanctions arises from John Somarakis's refusal to appear as required for a deposition. In accordance with Fed. R. Civ. P. 37(a)(5)(A)(i), the court hereby grants the motion (ECF No. 63) and imposes sanctions on John Somarakis in the amount of **$5,000** for his willful refusal to appear as ordered at a properly noticed deposition. This sanction shall be paid to Triosim.

As for Triosim's motion for default judgment, the court begins with the question of jurisdiction. The court has subject matter jurisdiction under 28 U.S.C. § 1332. (ECF No. 10, ¶ 7.) The court has personal jurisdiction over the defendants based in part on the forum selection clause in the parties' agreement. (ECF No. 10, ¶¶ 8, 9.)

This action arises from Triosim's purchase of assets belonging to Somarakis, Inc. (SI), and John Somarakis, including intellectual property, for $2,704,395.00 (ECF No. 66-1 at 4-5.) The parties' asset purchase agreement included extensive warranties whereby the sellers warranted that the assets were free and clear of any license or encumbrance of any kind and that they had disclosed all relevant contracts and obligations regarding the assets. (ECF No. 66-1 at 5.) Triosim later learned that John Somarakis and SI concealed two relevant agreements regarding the assets. (ECF No. 66-1 at 5-6.) SI had granted another company a worldwide license regarding its "Flagship Pump" and separately owed that company over $1.6 million. (ECF No. 66-1 at 5-6.) Moreover, notwithstanding a non-compete agreement, John Somarakis has expressed his intention to compete against Triosim outside of North America. (ECF No. 66-1 at 7.)

In its amended complaint, Triosim presents claims for breach of contract (Counts I, VII, and VIII), fraud (Count II), negligent misrepresentation (Count III), breach of the covenant of good faith and fair dealing (Count IV), unjust enrichment (Count VI), breach of the Defend Trade Secrets Act (DTSA) (Count IX),and breach of

the Wisconsin Uniform Trade Secrets Act (WUTSA) (Count X) (ECF No. 10 at 22-33.)

It also seeks declaratory judgment (Count V) and injunctive relief (Count XI).

It seeks default judgment as follows:

A.      awarding Triosim compensatory damages for breach of contract and negligent misrepresentation claims in the amount of $1,600,000;

B.      awarding Triosim $2,704,395 in compensatory damages and $5,408,790.00 in punitive damages for a total of $8,113,185.00 for its fraud claim;

C.      awarding Triosim $4,304,395.00 in compensatory damages and $8,608,790.00 in punitive damages for its claims under the DTSA and WUTSA;

D.      declaring that (i) Triosim is entitled to the Escrowed Amounts; (ii) Defendants have no right, title, interest, or entitlement to the Escrowed Amounts; (iii) Synovus Bank is entitled to release the Escrowed Amounts to Triosim without further obligation; and (iv) such other and further declarations as the Court deems just and proper;

E.      permanently enjoining Defendants from (a) violating the DTSA and the WUTSA by misappropriating, using, or disclosing the Target Assets; (b) violating the confidentiality and non–disclosure provisions of the APA (§ 7.9) by using or disclosing any Confidential Information of or relating to the Target Assets, and the Consulting Agreement (§ 8.2, § 8.3.2); (c) violating the non–competition and non–solicitation provisions of the APA (§ 7.10) and the Consulting Agreement (§ 8.3.1) by soliciting customers or employees of Triosim or competing in the industrial pump industry for a period of five (5) years from the date of the order; (d) using, disclosing, licensing, possessing or otherwise exploiting the Target Assets transferred under the APA; and (e) competing with Triosim's business, directly or indirectly, in any manner prohibited by the APA or the Consulting Agreement. All, as Confidential Information and Target Assets are defined in the APA and Consulting Agreement;

F.      awarding Triosim attorney's fees and costs in the total amount of $61,316.00;

G.      Awarding Triosim pre-judgment and post-judgment interest; and

3

H.    For such other and further relief as the Court finds just and proper.

(ECF No. 66 at 2-3.) Thus, Triosim seeks over $22.6 million in damages plus all funds held in escrow.

Regardless of how many theories or claims it presents, a plaintiff who suffers a single injury is entitled to only a single recovery. *Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 900 F.3d 377, 383 (7th Cir. 2018). It is obvious from its motion that Triosim is attempting to recover the same damages multiple times under different theories. In fact, Triosim concedes as much. (ECF No. 66-1 at 14-15.)

Triosim alleges that it sustained damages of $1,600,000 as a result of the defendants' failure to disclose that SI owed this sum to another company. (ECF No. 66-1 at 8.) While Triosim refers to this as an "out-of-pocket loss" it does not point the court to evidence that it paid this sum to the other company.

Absent proof that Triosim paid this obligation, the consequence of the undisclosed obligation was to reduce the value of SI's assets by that sum. In that sense, Triosim could be seen as having suffered $1.6 million in damages by having overpaid $1.6 million for the assets. However, Triosim separately seeks its full $2,704,395 purchase price in damages for its fraud claim. Its theory is that if the defendants had not withheld the fact that it owed $1.6 million and had licensed the Flagship Pump, it never would have purchased the assets. It then argues that it is entitled to punitive damages in an amount equal to double that sum.

By arguing that it is entitled to a full refund of its purchase price, Triosim argues, in effect, that the assets it purchased are worthless. Yet, at the same time, it

4

argues that the court should grant injunctive relief barring any defendant from using the purportedly worthless assets it purchased.

Triosim then again seeks $4,304,395.00 in paragraph C of its proposed judgment; the sum of its full purchase price ($2,704,395) plus the full sum of the undisclosed loan ($1,600,000) as damages for its DTSA and WUTSA claims. And then it again asks for a separate punitive damages award equal to double that sum.

On top of all this, Triosim seeks all sums that remain in escrow, which represent the portion of the purchase price not yet dispersed to the defendants.

Based on the record before the court, Triosim's compensatory damages are, at most, the amount it paid for the defendants' assets—$2,704,395. Yet it seeks compensatory damages of more than three times as much—$8,608,790.00—plus the $731,891.04 held in escrow for a total of $9,340,681.04. On top of that, it then seeks more than $14 million in punitive damages.

Triosim's claim for injunctive relief is incompatible with its assertion that it suffered damages in the full amount of its purchase price. Indeed, a party does not seek injunctive relief to prevent another from using assets that are worthless. Thus, by seeking injunctive relief Triosim acknowledges that it did not sustain damages in the full amount of the purchase price. Nonetheless, the court accepts that the Flagship Pump constituted the greatest portion of the assets that Triosim purchased (ECF No. 66-1 at 9) and therefore it purchased assets worth significantly less than what it paid.

How much less is unclear. In particular, the status and role of the undisclosed $1.6 million obligation and the third-party license for the Flagship Pump are not fully explained. There is some evidence that the $1.6 million obligation is related to the third-party license. (*See* ECF No. 68-10 at 90, sec. 7.3 (allowing for termination upon, in part, payment of the promissory note).) This could suggest that the value of the Flagship Pump was $1.6 million. Thus, Triosim's damages would be $1.6 million because the fair market value of the other assets it purchased was $1,104,395.00. But the $1.6 million price tag reflected a temporary license whereas Triosim thought it purchased the intellectual property outright.

It is also unclear whether Triosim can terminate the third-party license by paying the $1.6 million to the third party. If this was true, then again Triosim's damages are $1.6 million because that is the sum it must pay to obtain the assets that it thought it was purchasing. Triosim does not explain if the $1.6 million obligation is a liability that was included in its purchase of SI's assets such that Triosim must now pay it. Or does the obligation belong exclusively to SI, such that that the license will persist in perpetuity unless SI pays the obligation?

Based on the evidence presented, the court finds that as a result of the defendants' breach of contract, misrepresentation, and fraud, Triosim suffered damages constituting nearly its full purchase price. Triosim would not have purchased any assets from SI but for SI's fraud and misrepresentation regarding the Flagship Pump. Nonetheless, Triosim obtained valuable assets in the bargain such that its damages are not the full purchase price. The value of the Flagship Pump is

significantly greater than a mere license and thus $1.6 million does not reflect its fair market value. The court finds that the sum of $100,000 adequately accounts for the value of the assets less the Flagship Pump. Accordingly, as a result of the defendants' breach of contract, misrepresentation, and fraud Triosim suffered damages of $2,604,395.

The record supports the conclusion that the defendants' actions—in part, essentially selling the same asset twice—were done in an intentional disregard of the rights of the plaintiff and therefore merit punitive damages. *See* Wis. Stat. § 895.043(3). The court will award Triosim punitive damages in an amount equal to its actual damages for a total of $2,604,395 in punitive damages. The more than $14 million in punitive damages that Triosim seeks would be grossly excessive and incompatible with due process.

The court will grant Triosim declaratory relief as requested with respect to the escrow funds. Therefore, Triosim's consequential damages ($2,604,395) are reduced by the amount held in escrow ($731,891.04) for a net damages award of $1,872,503.96.

Triosim has proven that it is entitled to permanent injunctive relief. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (ECF No. 66-1 at 16-20). Therefore, the court will also grant Triosim's request for injunctive relief.

Pursuant to the parties' agreement, Triosim is entitled to attorney fees. (*See* ECF No. 68-1 27, sec. 8.4.3; *id.* at 37 (defining "claims" to include "attorneys' fees").) Based on counsel's declarations (ECF Nos. 65, 67) and the court's own familiarity with the history of this action as set forth in the record and discussed at multiple

conferences, the court finds the requested fees and costs to be reasonable and appropriate. Accordingly, the court will award Triosim fees and costs of $61,316.00.

Triosim also named SI Post, Inc., as a defendant. It does not allege that SI Post was directly responsible for the actions that occurred. Rather, it states, "Based on records available from the Secretary of State for the State of Washington, SI Post, Inc. is the successor to Somarakis, Inc." (ECF No. 66-1 at 4, fn. 1.) According to the amended complaint, "Upon information and belief, Somarakis, Inc. changed its name to SI Post, Inc. Somarakis, Inc. is sued to the extent it continued to do business notwithstanding its change in name." (ECF No. 10, ¶ 4.) Thus, the court accepts these uncontradicted assertions that SI Post, Inc. is the successor with respect to the liabilities of Somarakis, Inc.

Triosim has not proven that it is entitled to pre-judgment interest. As demonstrated by Triosim's assertion that it sustained damages many times what the court finds here, its damages were neither "liquidated, nor ascertainable by a reasonably certain standard of measurement." *See, e.g.*, *Pappas v. Jack O. A. Nelsen Agency, Inc.*, 81 Wis. 2d 363, 374, 260 N.W.2d 721, 727 (1978). No other circumstances make the award of prejudgment interest appropriate.

**IT IS THEREFORE ORDERED** that Triosim's motion for attorney fees (ECF No. 62) is **granted**. John Somarakis shall pay to Triosim the amount of **$5,154.90**.

**IT IS FURTHER ORDERED** that Triosim's motion for sanctions (ECF No. 63) is **granted**. John Somarakis shall pay to Triosim the amount of **$5,000** for his willful refusal to appear as ordered at a properly noticed deposition.

8

**IT IS FURTHER ORDERED** that Triosim's motion for default judgment (ECF No. 66) is **granted**. Clerk shall enter judgment as follows:

- Compensatory damages in favor of Triosim and against Somarakis, Inc., John Somarakis, and SI Post Inc., jointly and severally, in the amount of $1,872,503.96;

- Punitive damages in favor of Triosim and against Somarakis, Inc., John Somarakis, and SI Post Inc., jointly and severally, in the amount of $2,604,395.00;

- Attorney fees and costs in favor of Triosim and against Somarakis, Inc., John Somarakis, and SI Post Inc., jointly and severally, in the amount of $61,316.00;

- Attorney fees in favor of Triosim and against John Somarakis in the amount of $5,154.90;

- Attorney fees in favor of Triosim and against John Somarakis in the amount of $1,652.50 (ECF No. 61);

- Sanctions against John Somarakis in the amount of $5,000.00 payable to Triosim;

- Declaratory judgment that that (i) Triosim is entitled to the Escrowed Amounts; (ii) Defendants have no right, title, interest, or entitlement to the Escrowed Amounts; (iii) Synovus Bank is entitled to release the Escrowed Amounts to Triosim without further obligation; Injunctive relief enjoining Somarakis, Inc., John Somarakis, and SI Post Inc. from (a)

9

misappropriating, using, or disclosing the Target Assets; (b) violating the confidentiality and non–disclosure provisions of the APA (§ 7.9) by using or disclosing any Confidential Information of or relating to the Target Assets, and the Consulting Agreement (§ 8.2, § 8.3.2); (c) violating the non–competition and non–solicitation provisions of the APA (§ 7.10) and the Consulting Agreement (§ 8.3.1) by soliciting customers or employees of Triosim or competing in the industrial pump industry for a period of five (5) years from the date of the order; (d) using, disclosing, licensing, possessing or otherwise exploiting the Target Assets transferred under the APA; and (e) competing with Triosim's business, directly or indirectly, in any manner prohibited by the APA or the Consulting Agreement.

Dated at Green Bay, Wisconsin this 12th day of June, 2026.

s/ Byron B. Conway
BYRON B. CONWAY
U.S. District Judge
